May it please the Court, Joe Seguenza for Petitioner. There are two issues presented in this asylum case this morning. The first, whether substantial evidence supports the IJ's findings regarding nexus and persecution components of an asylum claim, and whether substantial evidence supports the Board's findings on a consolidated motion to reopen of insufficient change circumstances regarding the well-founded fear issue. Regarding the first issue, if I may, it's significant to note that the IJ did find Petitioner credible regarding his claimed incidents of persecution in Fiji. And it's of particular interest to note that in the judge's decision, he states as follows, quote, the situation confronting Indo-Fijians is not unlike the situation or conditions confronting aliens from many different countries, close quote. And also he goes on further to say that, quote, the government has attempted to work out the problems between the two communities, referring to Indo-Fijians and Native Fijians. And thirdly, quote, I am not satisfied that the respondent has established that he has been persecuted on account of one of the enumerated factors, excuse me. He also states in his opinion that he's not satisfied that in this particular case, the government in power does not make an attempt to control such claimed incidents or that they are unable to control such incidents. We would submit that those three comments are erroneous, if you will. By analogizing the Indo-Fijian situation in Fiji to other countries, such as I believe he states Indonesia and India, he makes an unfair comparison. Here we have 20 years of ongoing strife. We have four coups. We have 20 years of racial tension and hostility by Native Fijians against Indo-Fijians. And to analogize the situation to other countries, to make a generalization like that, we believe is an error. We believe that there is a sufficient nexus here. There is a balance. Kagan. What is your understanding of the IJ seemed to have he found that there was no nexus, even though there were epithets and so on at the time of the incidents. But what about the finding that there was not that the actions didn't arise to persecution? Did he ever explain that finding? I believe the IJ, in his opinion, Your Honor, referenced the fact that these incidents were more criminal-related, general lawlessness. But that really goes to nexus, right? It seems to me that he really didn't. That really is the same as the nexus issue. I believe it is. But you have to understand also that part of this ongoing strife between the Native Fijians and the Indo-Fijians encompasses exactly such incidents as Petitioner claimed at his hearing. In other words, you have on the surface what appear to be criminal-related incidents where they confront Native Fijians, excuse me, Indo-Fijians. They demand money, and an assault ensues, and racial epithets ensue. This is all part of a pattern and practice of this 20 years of ongoing strife. So to say that these incidents are just, quote, criminal incidents does not do justice, if you will, to the ongoing strife and the history that Indo-Fijians have suffered in Fiji. Well, there's no question that, as you read his opinion, he goes through talking about the particular incidents, and then he comes to a point where he suggests that, and now kind of having already determined that there's persecution or that there isn't persecution, on the other hand, we're going to talk about something else. So it doesn't seem to me that it's unclear that he's determined there isn't persecution. That, I'm sorry, Your Honor, that he did not determine that there is not persecution? Correct. I would submit that he does acknowledge that there the history of the strife. He does acknowledge that, assuming there was persecution, he goes on to say that the conditions in the country are the same. Well, he says, on the other hand, if there is persecution, that's where he is on the other hand. Right. So if he's going to get to the other hand, he certainly made a determination that he doesn't find persecution in the first paragraph, where he has quite a bit of stuff that we're now referring to. Then he goes to the, on the other hand, and then he goes even further. Even if, then it doesn't, he's trying to say that, as I understand it, it doesn't relate to the government conduct. Correct. And that's my understanding also, Your Honor. However, I think that the I.J. is in error in the sense that Well, I can understand your argument that he's in error. I'm just trying to make sure what your argument is. It seems to me that he goes in three different directions. First of all, he says there's no persecution. Second of all, he says if there is, then that persecution, you know, he doesn't believe it really meets the standard. And then he says that even if it doesn't meet, even if it does meet the standard, the government's not the one that's either backing off or not trying to do something about it. So he's hit it three different times in three different ways. I can understand your argument, but I just want to make sure you agree with me with those conclusions. I do agree, Your Honor. And the next thing, then, is that if we find that, aren't we really looking, then, for substantial evidence? Yes, we are, and we believe that substantial evidence in this case does not exist. He does reference, as I mentioned earlier, that the government he doesn't believe that in this particular case the government was unable or unwilling to assist the petitioners,  He testified that with respect to the first incident after the May 2002, for instance, the police summarily dismissed his complaint and in fact had said something to the effect we're not going to take a report, it's just a formality, we don't think that we're going to do anything about it. Anyway, when he said that they were not unable, he said except for the incident which I assume he means the entire set of events around 2000, which is primarily which went into September, October, and which was primarily what the petitioner testified to. That's correct, Your Honor. I believe that Petitioner testified that he had four incidents between the May 2002 and October in a span of five months before he and his wife left the United States. In that compressed period of time, we believe that there were sufficient, well-detailed incidents of persecution here. So to me the real question is the one I asked before. It seems to me that on the nexus problem, nexus issue, there is certainly substantial evidence that he doesn't acknowledge, and probably on the other. But what about I don't quite understand his basis for finding no persecution, and therefore I find a hard time, have a hard time evaluating it. What do you understand his basis to be for finding no persecution? The basis in this case for persecution? Yes. Or the failure to find. Right. For the failure to find. Right. Quite simply, Your Honor, Petitioner testified that he is part of a racial, racial Excuse me. I understand what the Petitioner said. I'm trying to understand what the I.J. said in response to what the Petitioner said. And maybe you're not the right person to ask, but I'm trying to get your take on what the I.J. decided. Quite frankly, Your Honor, I had trouble understanding why he wasn't able to find a lack of persecution or nexus. It's the opinion is somewhat vague in that regard, according to my understanding. He does state that whatever incidents there were, they were criminal-related and there were random violence and lawlessness, especially right after the Well, eventually, he seems to be coming to a what he seems to think is a rule of law, and I guess I'd like to know whether you think it is, that where there's hazards of personal injury that arise as a result of conflict between majority and minority ethnic groups is not persecution. And then he cites some cases. Is that a correct statement of the law? I don't believe it is. I believe, again, given the unique history of this country and the fact that there are two groups involved, native Fijians and Indo-Fijians, to say that to summarily dismiss it in that regard, I think, just totally overlooks the history of the strife in Fiji. But when you look at those cases that he cites, they all seem to indicate, or they're at least Ninth Circuit law indicating and BIA law indicating that even though there was some acts that would seem to be persecution, in those cases, they found them not to be persecution. Yes, Your Honor. All those, those are the ones that people generally cite on our Court for, even though there's some acts that might look like persecution, they're really not persecution. They don't add up. And so, therefore, we don't give them persecution, correct? That's correct, Your Honor. Because he cites. Yes, I'm aware of that. But also, if you look at it as a mixed motive situation, if there's a mixed motive here, I believe the precedent also is that there's sufficient persecution  that we would submit that this is a mixed motive case. And if there are no further questions, I'll reserve whatever time I have for rebuttal. May it please the Court. Dan Sham on behalf of the United States Government. To sustain this petition for review, the record must compel the conclusion that no reasonable fact finder can conclude that petitioners failed to establish past persecution or a well-founded fear of future persecution based on their pattern of practice claim. Now, because substantial evidence does show that the incidents that the Petitioners allege. This isn't a pattern of practice claim, is it? They do make a pattern of practice claim in their motion to reopen. But I don't understand it to be a central question here. Excuse me? I don't believe that's the central question here, whether there's a pattern of practice. Let's assume there isn't, and let's go on from there. Okay. You see, what he says is he means the IJ. I guess it's a little hard to follow because he characterizes the Petitioner's testimony as describing general acts of lawlessness, right, and, you know, random violence. But at the same time, he does concede that there's this conflict between the majority and the minority elements, which gives some, you know, color of persecution, right, on account of ethnicity. Isn't that what that lawlessness amounts to? The reason for it is because of the ethnicity. In fact, he says, you know, there's mob action of one ethnic group against another. That's the way he characterizes it. I think I'm looking at that page your Honor is looking at. I think it's the 13th and 14th page of the IJ decisions. And it — Yeah. The one on page 13. The statement where the board has indicated unequivocally that hazards of personal injury which arise as a result of conflict between majority and minority ethnic groups is not persecution. I think that that's a rather vague statement. What does he mean by that? Isn't that a wrong statement? I think that what — I think within the context of what the IJ was stating, I think that what he was saying there was that if there's conflict, there's going to be certain amounts of lawlessness that result, but not necessarily from persecution of one ethnic group against another. But he earlier says, as Judge Smith said earlier, there are three pieces here. Okay. Let's start with the nexus question. Okay. All right. He says in this particular case, the specific segment of the population affected for the most part is the Indo-Fijian population. First of all, he says that. He says that there's a conflict between the majority and minority. Then he overlooks entirely in dealing with the particular incidents that there was specific evidence, which he credited, that in two or three of the incidents there were ethnic slurs and statements made about go back to India and so on as part of the incidents, which he doesn't deal with at all. So isn't the nexus piece just untenable? I would respectfully disagree, Your Honor. So tell me why it's tenable, then. Certainly. I think that obviously the generalized violence itself would not be sufficient to constitute persecution. Now, within that ---- I'm not talking about that now. I'm talking about the nexus issue. Right. Okay. So there were exactly, I believe there were two or three, as Your Honor said, there were two or three incidents in which ethnic slurs were uttered. But within the context of those, for example, the first one was when the house was stoned, Sinha himself testified that that was an incident that happened to all individuals. There were no ethnic slurs uttered there. The bank attack, again, he says, was a common occurrence thing that is not very unusual. It happens almost every time. It doesn't matter if it's unusual. I mean, if there ---- Right. Why does it matter if it's unusual? If people are being routinely attacked because of their ethnicity, isn't that worse, not better? Right. And I think within the context of the facts in this case, the fact that racial slurs were uttered do not overlook the fact that with the home robbery, it was clear that he was looking for money. Both of the robbers were looking for money. So what? But they still attacked these people and did so because, at least in part, it appears, because of their ethnicity. And you can say it's not persecution, but I don't see how you can say it's not ---- Well, I think that there's not enough evidence in the record to show that it was because of their ethnicity. The fact that they uttered racial slurs doesn't necessarily mean, doesn't turn ---- Well, but we have lots of case law that has relied on that as being a reason, because how else are you going to find out what's going on in the head of people who are attacking you? If they're of a different group and they are uttering racial slurs while they're doing it, and what else? We would call it a hate crime in this country. Well, I think within ---- there were two specific incidents, I think, that heavily involved money. The first was the robbery in the home, and the second was the robbery from the bank when he cashed in his paycheck. In both cases, the testimony would show that, you know, they came, they took the money, and as they were leaving, as a throwaway, they simply uttered racial slurs. It wasn't, we're here to attack you because you're ---- All right. What about this business with the Shoeshine Boys? I mean, there was very specific evidence in the record about why they were called I don't know why they were called Shoeshine Boys. They were just people who shined shoes. Well, they were people that shined shoes. I know, but they also apparently used this phrase because they were going to shine the Fijians out of, the Indians out of Fiji. But in his opinion, he just makes fun of the whole thing and doesn't acknowledge that reason, that explanation. Well, I think the IJ, I can't look into the mind of the IJ, but it would seem that that particular incident simply didn't rise to persecution. It was, you know, it was, at most, it was harassment. They chased her for ---- All right. So let's go to the question of whether there was persecution. What is the IJ's reason for finding there wasn't persecution? I think that Your Honor correctly pointed out that the IJ decision is, it seems to conflate a couple of issues. But I think at the heart of it, what the IJ is simply stating is that persecution itself is a term of art. It's not, it doesn't happen just because something bad, so for example, if I was in another country and a family that hated my family attacked me and robbed me constantly, that wouldn't be persecution because persecution is a term of art. All right. But that goes to the nexus question. So I want to know, independent of the nexus question, is there anything in here independent of the nexus question as to why he didn't find persecution? Again, Your Honor, I think that, I mean, there's definitely a case law in this circuit that states that the facts, what had happened to the prisoner in and of itself didn't rise to the level of persecution. But he never says that. That's what I, see, that's what I'm pointing out. It doesn't seem to me he ever says that. So what does he say? Right. I think the IJ simply understood persecution to be a term of art, and therefore he kind of conflated that with the nexus question. So. So you think he did conflate it with the nexus question. Well, let me back up now. You know, okay. Let's say there are two issues we have to say. One, well, the IJ has to say, one, did the conduct, whatever it was, you know, against the Petitioner, did it amount to persecution? Now, isn't that question, whether it's persecution or not, a question of how bad the conduct was without regard to the on account of ground, just is it persecution or not? Right? That's a, okay. Now, treating that question, did the IJ make a finding that there was or was not persecution? Did he make a finding either way? As to how bad it was. Yes. I don't think that's not in the decision. You don't think he made a finding on that? I think that he concluded that because it wasn't persecution, he didn't make a specific finding as to whether it was bad. Well, wait a minute now. He said if he concluded there wasn't, that means he found there was no persecution. Right. In the sense that, you know, the conduct wasn't bad enough. Right. Did he find that? Independent of the nexus question of whether or not it was related to. Independent of the nexus question. When you and Judge Berzon used the word nexus, I assume you mean the requirement that it be on account of a protected ground. Right. So putting that aside, did he find there was persecution or not? I mean, what's your position on that? That whether the harm itself was bad enough? Yes. Well, I think he also still does because he's, I mean, he defines persecution as an extreme concept not involving every sort of treatment that society regards as offensive, nor encompassing all treatment. He defines what persecution is. He says that there was no persecution. I know that. But, I mean, did he make a factual finding that whatever these Shushan boys or whoever they're, whatever they did was not bad enough to amount to persecution? He didn't address it. It was bad enough to amount to persecution. He did not address the specific incident. He didn't address it. The specific incident. So the only finding he really made was the on account of, that whatever happened was not on account of, not, not, it was not on account of a protected ground? Did he make that finding? And he also made a finding as to the fact that the government was both willing No. What did he say? He also, you just said he didn't make any finding on persecution. So it can't be he also made a finding. But he also made a finding on whether the government was unwilling or unable. Right. And I think on account of, if the Petitioners cannot show that it was on account of race or protected ground, it wouldn't be persecution. Did the I.J. make a, make a finding on the, on account of ground? I believe so. Okay. And what was his finding? His finding was that he, that the incidents that happened to the Petitioners were general acts of lawlessness that didn't, that didn't, wasn't because They were not on account of the Petitioners' ethnicity? Right. Right. Where does he make that? All right. He says the next question, court must resolve, assuming arguendo, that what happened to respondent was persecution is, was it on account of race? And you're saying he answered that question yes? He said the answer was no. I mean, he answered that question no. Yes. What was, well, does he say it was, what it was, what the reason for it was? What it was on account of? Just general lawlessness? That was the only reason? Yeah. So you conclude that it was just on account of general lawlessness. All right. And I think certainly with the, with the motion to reopen, the evidence, I would, I would, I would also urge this Court to look at the evidence in the motion to reopen. It clearly shows that the, the news articles, can I, well, I'm running out of time. Yes, you're about to finish your question. Okay. Well, we're, the government's position on that issue is simply that all the evidence supporting the motion to reopen actually suggests that it would actually be safe for Indo-Eugenes to return. All the 2006 articles indicate that the military could. That's a different question. I mean, at this point, he's dealing with past persecution, and he says, except for the relevant period. So I don't see that he is finding that. He's accepted the relevant period. I think that persecution, again, is a term. No, I'm talking about the, the able or unwilling part. On the unable or unwilling part, he accepted the relevant time period. He accepted the relevant time period. He accepted it. He left it. He said, except for the, the period around May 2000. I'm not sure what page. He said, the government in power does, it is not satisfied in this particular case that the government in power does not make an attempt to control such incidents nor under the circumstances are they unable to control the incidents, with the possible exception of the incident we got totally out of control in May of 2000. So, I mean, I don't know if he means exactly May of 2000. I take him to mean the whole period around then. Right. And I think that the military coup in 2000 was the petitioners argued that these incidents of law has happened after the military coup, but they don't state that the claim itself is linked to the military coup somehow. That there was just a general outbreak in lawlessness at that time. So, Your Honor, I have no more questions. Okay. Thank you very much. Thank you for your argument. Let's see. I don't know what time you have. I realize that the second piece. You have about 19 seconds, but we'll give you a minute. Okay. Actually, you're under minus 19 seconds, but we'll give you a minute. Go ahead. Thank you. I'll make it brief. Just on the motion to reopen issue, we believe the Board abused its discretion by requiring Petitioner to produce evidence constituting an individualized threat, as the Board phrased it. We believe that places an unfair burden on Petitioner. We would also submit that the Board, in reviewing the motion to reopen, only viewed in isolation the 2006 coup and didn't take into account the 20 years of ongoing strife, the credible testimony of Petitioner as to his claimed incidents of persecution, and the fact that, in his sworn statement, he references conversations with family back in Fiji or relatives that there are still ongoing problems. If you view everything in that context, we believe there's sufficient showing on the motion to reopen. Thank you very much. Thank counsel for their arguments. Thank you. The Seahawks v. McCasey is submitted.
judges: Tashima, Berzon, N.R. Smith